IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUDIETTE R. WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-cv-1257-DWD |
| | ) |
| RESURGENT CAPITAL SERVICES, | ) |
| L.P., and LVNV FUNDING, LLC, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Judiette R. White brings claims against LVNV Funding LLC ("LVNV") and Resurgent Capital Services, L.P. ("Resurgent") (collectively, "Defendants"). Plaintiff's claims arise out of a debt said to be owed by Plaintiff in connection with a QVC, Inc. account ("QVC"). QVC charged off the subject debt and sold it to LVNV. LVNV then utilized Resurgent to manage collection of the account.[1] Plaintiff contends Defendants efforts to collect the debt violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* The wrongful conduct at the heart of Plaintiff's Complaint is Defendants' alleged failure to adequately validate the debt in violation of 15 U.S.C. § 1692g. The Complaint further alleges that the same conduct violated 15 U.S.C. § 1692e and § 1692f.

---

[1] LVNV also employed TrueAccord and Credit Control, LLC ("Credit Control"), independent third parties, to try and collect the subject debt.

Presently before the Court is Defendants' Motion for Summary Judgment ("Motion") (Doc. 26). The thrust of Defendants' argument is that Plaintiff's claims rest on the wrongful belief that Resurgent's verification of the debt was insufficient. Defendants contend that because they appropriately validated the debt, they are entitled to summary judgment on all counts.

In responding to the Motion, Plaintiff states that she is abandoning her claims to the extent that they are premised upon the sufficiency of Defendants' validation (Doc. 30). Plaintiff maintains, however, that genuine issues of material fact remain as to Defendants' alleged violations of 15 U.S.C. § 1692e and § 1692f. As to these claims, Plaintiff contends Defendants' inclusion of a validation notice on the initial communication and on a subsequent communication, as well as Defendants' efforts to collect on the account when verification requests were pending, constitutes unfair and deceptive conduct in violation of the FDCPA.

## I. BACKGROUND[2]

On or about March 12, 2021, Plaintiff received a debt collection email from TrueAccord, an independent third party hired by LVNV to attempt to collect on the debt (Doc. ¶¶ 12-13, 26-1, p. 2, ¶ 6). This was the first written communication Plaintiff received in connection with the subject debt, and it included the validation notice required under 15 U.S.C. § 1692g(a). *Id.* The validation notice provided as follows:

> Unless you notify us within 30 days after receiving this notice that you dispute the validity of this debt, or any portion of it, we will assume this debt is valid. If you notify us in writing within 30 days after receiving this

---

[2] The material facts are not in dispute.

> notice that you dispute the validity of this debt, or any portion of it, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of us in writing, within 30 days after receiving this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.

(Doc. 26-1, p. 13). On April 5, 2021, Plaintiff sent a written validation request and an email regarding the same to TrueAccord (Doc. 1, ¶¶ 14-15; Doc. 26-1, pp. 2, 8, 10).

On April 14, 2021, Resurgent sent two letters to Plaintiff (Doc. 1, ¶¶ 16-21; Doc. 26-1, pp. 2, 13, 15-16). The first April 14 letter identified the original creditor (QVC Inc.); the current creditor (LVNV Funding LLC); Resurgent's reference number for the account (705326801); the last four digits of the account number (1564); and the amount of the debt ($454.53) (Doc. 26-1, p. 13). It further stated: "Resurgent Capital Services L.P. manages the above referenced account for LVNV Funding LLC and has initiated a review of the inquiry recently received either directly or from TrueAccord, the current servicer of this account." (Doc. 26-1, p. 13). The letter also included another validation notice, stating that Plaintiff had 30 days from receipt of the notice to dispute the validity of the debt (Doc. 1, ¶ 19; Doc. 26-1, p. 13).

The second April 14 letter included an account summary verifying the debt (Doc. 26-1, pp. 15-16). The account summary identified: the Resurgent's reference number for the account (705326801); the last four digits of the account number (1564); name of the current creditor (LVNV Funding, LLC); name of the debtor (Judiette White); address of the debtor (an address in Belleville, Illinois); name of the original creditor (QVC Inc.); current balance due ($454.53); account charge-off amount ($495.80); balance at time of

3

acquisition ($924.93); date of last payment (September 18, 2019); date account was opened (October 29, 2018); and date account was charged off (August 1, 2020). *Id*.

In response to Resurgent's April 14th letters, Plaintiff submitted additional validation requests to Resurgent on April 19th and April 22nd (Doc. 26-1, pp. 18, 20-21, 23). On May 19, 2021, Resurgent placed Plaintiff's account with Credit Control, LLC ("Credit Control"), an independent third party employed by LVNV to attempt to collect on the debt (Doc. 26-1, p. 2), and on May 24, 2021, Credit Control sent Plaintiff a communication attempting to collect on the subject debt (Doc. 30-2). The letter from Credit Control identified the current creditor (LVNV Funding LLC); the original creditor (QVC Inc.); the amount due ($454.53); and the last four digits of the account number (1564). The letter also explained as follows: "Dear Judiette White, please be advised, our client, LVNV Funding LLC, has placed the above-referenced account with our office for collection. We want to bring this matter to your attention." (Doc. 30-2). The letter identified Credit Control as a debt collector and provided Plaintiff with options for paying on the account. It also included a validation notice (Doc. 30-2).

Plaintiff sent a validation request to Credit Control and an additional validation request to Resurgent on June 9, 2021 and June 21, 2021 (Doc. 26-1, pp. 2, 25-26, 33-35, 37). Resurgent sent additional correspondence stating that it had received inquiries regarding the specified account and had initiated an investigation on June 14, 2021 and September 17, 2021 (Doc. 26-1, pp. 2, 28, 39). Resurgent sent additional account summaries, validating the subject debt, on June 15, 2021 and September 18, 2021 (Doc. 26-1, pp. 2, 30-31, 41-42).

## II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden of demonstrating that no evidence exists to support the non-moving party's contentions. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, then the non-moving party must set forth specific facts showing that there is a genuine issue of material fact requiring a jury trial. *Id.* at 324. In reviewing a motion for summary judgment, the Court must view the record and draw all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). However, "this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48 (emphasis in original); *see also Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (noting that court is required to draw "only those inferences that are reasonable").

## III. The Fair Debt Collection Practices Act

In response to the abusive and deceptive practices of some debt collectors, Congress enacted the FDCPA as follows:

> It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively

5

> disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692(e).

### A. Section 1692g (Validation of Debts)

In addition to avoiding abusive debt collection practices, the FDCPA requires debt collectors to take affirmative steps to notify debtors of their rights. In relevant part, 15 U.S.C. § 1692g requires debt collectors to provide timely written notice as follows:

> (a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

In the event a consumer timely disputes the debt under (a), the debt collector must take further steps under (b):

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

**B.  Section 1692e (False or Misleading Representations) and Section 1692f (Unfair or Unconscionable Conduct)**

Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. It also identifies a variety of conduct that constitutes "a violation of the statute," including, as relevant here, "[t]he false representation of … the character, amount, of legal status of any debt[,]" *id.* § 1692e(2)(A); and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer[,] *id.* § 1692e(10). Similarly,  § 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f.

**D.  Unsophisticated Consumer Standard**

Sections 1692e, 1692f, and 1692g(b) are all concerned with protecting consumers from confusion. The Seventh Circuit has held that "the inquiry under

7

§§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter." *McMillan v. Collection Prof'ls*, 455 F.3d 754, 759 (7th Cir. 2006). The unsophisticated consumer may be "uninformed, naïve, and trusting," but is "not a dimwit," has basic financial knowledge, and is able to make rudimentary logical inferences. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (quoting *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003)). The unsophisticated consumer does not read dunning letters in a "bizarre or idiosyncratic fashion" but she is also not presumed to know relevant legal precedent. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2007)); *Lox*, 689 F.3d at 825.

Finally, to be actionable, a challenged statement must not only be confusing or misleading; it must also be material. *Koehn v. Delta Outsource Grp., Inc.*, 939 F.3d 863, 864 (7th Cir. 2019); *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009).

### III. DISCUSSION

**A. Abandoned Claims – Count 1.C and Paragraphs 57-58 and 61 of Counts 1.A and 1.C**

In responding to the Motion, Plaintiff states she is abandoning all claims premised on Defendants' allegedly insufficient debt validation (Doc. 30, pp. 2, 5). Plaintiff states that this includes her claim arising under § 1692g(b) in its entirety and paragraphs 57-58 and 61 of her claims arising under § 1692e and § 1692f. *Id.* Plaintiff's abandoned claims, and the relevant authority, are not easily separated from Plaintiff's remaining claims. Accordingly, the Court evaluates these claims below.

Section 1692g of the FDCPA requires a debt collector to validate a consumer's debts in certain circumstances. 15 U.S.C. § 1692g. This section "was enacted to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 134 (2d Cir. 2010) (quoting S. Rep. No. 95-382, at 4 (1977)).

Section 1692g(b) provides a consumer with a right to request validation of his debt within thirty days after the initial communication from a debt collector. 15 U.S.C. § 1692g(b). Once the debt collector receives this notice, the debt collector "shall cease collection of the debt, or any portion thereof, until the debt collector" mails the verification to the consumer. *Id.*

The Seventh Circuit has explained that verification of a debt under this provision does not obligate the collector to confirm whether the underlying debt actually belongs to the consumer. *Walton v. EOS CCA*, 885 F.3d 1024, 1027 (7th Cir. 2018). Indeed, "[i]t would be both burdensome and significantly beyond the [Fair Debt Collection Act's] purpose to interpret § 1692(b) as requiring a debt collector to undertake an investigation into whether the creditor is actually entitled to the money it seeks." *Id.* at 1027-28. Rather, § 1692g(b) merely requires the debt collector to confirm in writing that the amount being demanded matches the amount the creditor claims is owed. *Id.* at 1028. *See also, Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) ("verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt") (citations omitted).

Plaintiff received the first written communication regarding the debt on March 12, 2021. That communication included the validation notice required by 1692g(a). On April 5, 2021, Plaintiff sent a written validation request and an email, triggering Defendants' duty to cease collection efforts until it verified the debt and mailed a copy of the verification to Plaintiff. 15 U.S.C. § 1692g(b).

Upon review of the record, it is evident that Defendants provided sufficient verification on April 14, 2021 (Doc. 26-1, pp. 15-16). That communication, described as an "account summary report" identified the reference number for the account; the last four digits of the QVC account number; name of the current creditor; name of the debtor; address of the debtor; name of the original creditor; current balance due; account charge-off amount; balance at time of acquisition; date of last payment; date account was opened; and date account was charged off. This was more than enough information to satisfy the verification requirements set forth in § 1692g(b). *See Walton v. EOS CCA*, 885 F.3d 1024, 1027 (7th Cir. 2018).

After Defendants mailed the requested validation, they were free to resume collection efforts. 15 U.S.C. § 1692g(b). Moreover, Plaintiff's subsequent verification requests, all of which occurred outside the statutory thirty-day validation period,[3] did

---

[3] Plaintiff received the first communication from Defendants on March 12, 2021. That communication included a validation notice. Accordingly, Plaintiff had 30 days from March 12, 2021 (or until April 11, 2021) to request verification of the debt. She did so on April 5, 2021, and on April 14, 2021, Resurgent sent an account summary, validating the debt. Her subsequent verification requests, which occurred on April 19, 2021, April 22, 2021, June 9, 2021, and June 21, 2021, were outside the statutory thirty-day period for requesting verification. Nonetheless, Resurgent sent additional account summaries, validating the subject debt, on June 15, 2021 and September 18, 2021 (Doc. 26-1, pp. 2, 30-31, 41-42).

not trigger additional duties under § 1692g(b). The FDCPA contemplates a single debt verification period, giving consumers the opportunity to request verification within 30 days of receiving the debt collector's *initial* communication. 15 U.S.C. § 1692g(b). Thus, as other district courts have concluded, "[t]he FDCPA does not require that the debt collector validate a debt every time a consumer requests that it do so. Section 1692g of FDCPA provides consumers the opportunity to dispute and seek verification only after the debt collector's initial communication with the consumer." *Taylor v. Nationstar Mortg., LLC*, LTW, 2016 WL 6662734, at *6 (N.D. Ga. July 29, 2016), *report and recommendation adopted in relevant part*, 2016 WL 7131593 (N.D. Ga. Aug. 22, 2016). *See also Munroe v. Specialized Loan Servicing*, LLC, 2016 WL 1248818, at *8 (E.D.N.Y. Mar. 28, 2016) (the text of the FDCPA does not entitle the consumer to continuously seek debt validation after each dunning notice, but rather the consumer is entitled to seek validation of the debt after the debt collector's initial communication). Moreover, a "[p]laintiff cannot forestall collection efforts by repeating the same unsubstantiated assertions and thereby contend that the debt is 'disputed,' " because if plaintiff were "permitted to do so, debtors would be able to prevent collection permanently by sending letters, regardless of their merit, stating that the debt is in dispute." *Hawkins-El v. First Am. Funding, LLC,* 891 F. Supp. 2d 402, 410 (E.D.N.Y. 2012).

Considering the authority discussed herein, the Court finds that Defendants met the FDCPA's verification requirements and did not otherwise violate §1692g(b). Accordingly, Defendants are entitled to summary judgment as to Plaintiff's § 1692g(b)

11

claim in its entirety (Count 1.C) and as to Plaintiff's §1692e and § 1692f claims premised on the sufficiency of Defendants' validation (Count 1.A ¶¶ 57-58 and Count 1.B ¶ 61).

**B.     Remaining Claims – Section 1692e (Count 1.A ¶ 56) and Section 1692f (Count 1.B ¶¶ 60 and 62)**

Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e; see *Ruth v. Triumph P'ships*, 577 F.3d 790, 799-800 (7th Cir. 2009). This provision, essentially a "rule against trickery," *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007), sets forth "a nonexclusive list of prohibited practices" in sixteen subsections, *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019 (7th Cir. 2014). Plaintiff invokes subsections (2)(A) and (10) which proscribe, respectively, making a false representation as to the "legal status of any debt," 15 U.S.C. § 1692e(2)(A); and using "any false representation or deceptive means to collect or attempt to collect any debt," 15 U.S.C. § 1692e(10). Section 1692f, meanwhile, proscribes the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Plaintiff's § 1692e claim is premised on the same allegations as her § 1692f claim – that Defendants acted deceptively when they attempted to collect on the debt by turning it over to Credit Control despite having received Plaintiff's requests for validation and/or while Plaintiff was actively disputing the debt with TrueAccord and Defendants (Doc. 1, ¶¶ 56 and 62). Because these claims rest on the same premise, they rise or fall together.[4]

---

[4] Section § 1692f is considered a "catch-all prohibition on unfairness" for unfair or unconscionable behavior that slips through the FDCPA's cracks. *Todd v. Collecto, Inc.*, 731 F.3d 734, 739 (7th Cir. 2013). there is some

Here, the only basis for alleging that Defendants' attempts to collect on the debt were misleading or deceptive is that the debt was in dispute. But, as previously explained, after Defendants provided verification of the debt, they were free to resume collection efforts. Plaintiff cannot forestall collection efforts by disputing the debt into perpetuity. Nothing in the record provides a basis for concluding that Defendants violated § 1692e or § 1692f by turning the account over to Credit Control and resuming collection efforts after providing the requested verification.

Plaintiff also objects to being subjected to a second third party debt collector, but she cites no authority (and the Court is aware of none) establishing that utilizing more than one debt collector to collect on a debt violates the FDCPA. Further, Plaintiff does not identify any statements contained in Credit Control's letter (Doc. 30-2) that are false, misleading, unfair, or unconscionable.

Plaintiff also contends Defendants' first April 14 letter (Doc. 26-1, p. 13), which was sent after Plaintiff's thirty-day statutory validation period expired,[5] was false, misleading, and/or unfair because it included a second validation notice (Doc. 30, pp. 6-

---

authority for the proposition that § 1692f claims that are predicated on the same factual allegations underlying another § 1692 claim fail to state an independent basis on which relief can be granted. *Hayes v. Receivables Perf. Mgmt., LLC*, 2018 WL 4616309, at *6 (N.D. Ill. Sept. 26, 2018); *Heffron v. Green Tree Servicing, LLC*, 2016 WL 47915, at *5 (N.D. Ill. Jan. 5, 2016). The Court, however, need not resolve this question for purposes of addressing the instant Motion for Summary Judgment.

[5] As previously explained, Plaintiff received the first communication from Defendants on March 12, 2021 (Doc. 1, ¶ 12; Doc. 26-1, p. 2, ¶6). That communication included the validation notice required by § 1692g(a). *Id*. Thus, Plaintiff had thirty days from March 12, 2021 (or until April 11, 2021), to request verification of the debt.

7).[6] The Seventh Circuit has not directly addressed this issue, but the majority of courts that have considered this argument have concluded "that a second validation notice, sent after the thirty-day period following the first validation notice expired, neither confuses the consumer, discourages the consumer from exercising his statutory right to dispute the validity of the debt within the thirty-day period, nor constitutes a false or misleading representation in connection with the collection of the debt." *Paige v. Waukesha Health System, Inc.*, 2013 WL 3560944, *9 (E.D. Wisc. July 11, 2013).[7] *See also*, *Young v. G.L.A.*

---

[6] As to whether a subsequent validation notice creates a new thirty-day validation period, the Court finds *Delmoral v. Credit Protection Ass'n, LP* to be instructive:

> The thirty-day validation period under § 1692g, though running from the date that the debt collector provides the debtor with notice of its validation rights, is created by statute, not by the notice itself. [Plaintiff] cites no authority for the proposition that a new thirty-day validation period can be created by a communication from a debt collector, much less for the proposition that any such period, although not contemplated by the statute, would nonetheless otherwise be strictly subject to all of its provisions. Furthermore, this proposed interpretation is in tension with the plain language of the statute itself, which appears to contemplate the creation of a single validation period. See § 1692g(a) ("Within five days after the initial communication with a consumer ... the notice ... the thirty-day period...."). Indeed, if a validation notice sent after the initial validation period could in fact create a new validation period, the subsequent validation notice would always violate § 1692g(a), as it would not have been sent within five days of the initial communication. Finally, there is no reason to believe that multiple validation periods are necessary in order to give effect to the statute's purpose. As explained by the Senate Report accompanying the enactment of the FDCPA, the purpose of § 1692g was to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid," an objective which was satisfied when [Defendant] provided [Plaintiff] with a validation notice in the December 15 Letter. *See* S.Rep. No. 95–382, at 4 (1977).
>
> Thus, a validation notice sent after the initial thirty-day period contemplated by § 1692g—regardless of what rights it might create between the debt collector and the consumer in contract, equity, or otherwise—does not establish a new statutory thirty-day period.

2015 WL 5793311, *9 (E.D.N.Y. Sept. 30, 2015).

[7] At least one district court has found that a second validation notice might be actionable if it is sent within the initial thirty-day validation period. *See Maloney v. Alliance Collection Agencies, Inc.*, 2018 WL 5816375 (E.D. Wisc. 2018) (finding that plaintiffs sufficiently stated claims under sections 1692e and 1692g where they alleged defendants' second validation notice, sent within the initial 30-day validation period, was "confusing": "a consumer who receives a second [validation] notice may reasonably wait until after the

14

*Collection Co.*, 2011 WL 6016650, at *2–*3 (S.D.Ind. Dec. 1, 2011) ("Receipt of the second notice, proscribing a second 30-day period for validation, does not in any way hamper the unsophisticated debtor's exercise of her rights to request validation of the debt."); *DiRosa v. North Shore Agency, Inc.*, 56 F.Supp.2d 1039, 1040 (N.D.Ill 1999) (finding plaintiff could not be adversely confused by a second validation notice sent after expiration of the initial thirty-day validation period).

The decisions discussed above turn on the question of materiality. To be actionable, a challenged statement must not only be confusing or misleading; it must also be material. *Koehn v. Delta Outsource Grp., Inc.*, 939 F.3d 863, 864 (7th Cir. 2019); *Hahn v. Triumph P'ships LLC,* 557 F.3d 755, 757-58 (7th Cir. 2009). Receiving a second validation notice after the statutory thirty-day validation period has expired, does not, standing alone, create actionable confusion. It "neither affect[s] the validity of the first validation notice nor hamper[s] the consumer's exercise of rights during the statutory thirty-day period; thus, the consumer [is] not adversely affected." *Paige*, 2013 WL 3560944, *9. This is especially true where, as in the instant case, the second validation notice was sent after Plaintiff exercised her statutory right to dispute the debt. Given these circumstances, Plaintiff was not adversely impacted by the April 14, 2021 validation notice. Accordingly,

---

initial 30-day period to dispute the claim[;] [i]n doing so, she unknowingly forfeits the statutory right to dispute the debt and trigger the ceasing of collections activities required by the [FDCPA]"). *But see Brenker v. Creditors Interchange, Inc., 2004 WL 594502 (S.D.N.Y. Mar. 25, 2004)* (two letters mailed five days apart including the same validation notice "created no reasonable possibility of confusion in derogation of the debtor's rights"). Further, the position taken by the district court in *Maloney* appears to be a minority position. *See Kurzdorfer v. Constar Fin. Servs., LLC*, 490 F. Supp. 3d 663, 669-70 (W.D.N.Y. 2020) (explaining that "[a] majority of district courts nationwide" have concluded that sequential validation notices, sent within the statutory thirty-day period, do not violate the FDCPA and describing *Maloney* as an "outlier" that appears to contradict the stated purpose of the FDCPA).

Defendants' are entitled to summary judgment as to Plaintiff's remaining § 1692e and § 1692f claims.

## IV.    CONCLUSION

For the reasons discussed herein, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 26), and judgment is entered in favor of Defendants, LVNV Funding, LLC and Resurgent Capital Services, L.P., and against Plaintiff, Judiette R. White on all grounds raised. The Clerk of the Court is **DIRECTED** to enter judgment accordingly. Each party shall bear its own costs.

**SO ORDERED.**

Dated: March 24, 2023

DAVID W. DUGAN
United States District Judge